Peterson v. Marković, Airstream Banking, cases 15-690-23-614 and 23-700. So we'll start with Mr. Kurentsi. Kavanevski, thank you, Your Honor. And then we'll proceed. Good afternoon, Your Honors. May it please the Court, Benjamin Kavanevski of Davis, Spokane, Wardwell for defending Airstream Bank S.A. Let me begin by saying that I hope plaintiffs as victims of terrorism get every last penny of their judgment from Iran. I and my client really do. They deserve it. And if the issue in this case were as simple as deciding who is more deserving of these assets, my clients would gladly give them to plaintiffs rather than Bank Marković. But it's not that simple. Plaintiffs have sought turnover here in New York, but as this Court has already found, both Clearstream and the asset, the right of payment that plaintiffs seek, is and has always been located in Luxembourg. And as this Court has also already found, the interest and redemption payments that Clearstream received as a global clearinghouse and securities intermediary more than a decade ago into J.P. Morgan's account were exclusively the property of Clearstream. They were never transferred to Luxembourg and likely went out the door the very same day to satisfy whatever U.S. obligations Clearstream had that day. Accordingly, this is nothing like the Peterson 1 case where the assets were here in the United States. Also unlike Peterson 1, Marković has sued my client in Luxembourg and obtained a court order preventing Clearstream from complying with any turnover order issued by a New York court. If Clearstream turns over the assets to plaintiffs, it would be in direct violation of a court order in Clearstream's own home country, and there is grave risk that Clearstream would be on the hook to Marković in Luxembourg and required to pay the same $1.6 billion twice. That would be catastrophic for Clearstream. That would be the end of the game for Clearstream. Now, in our briefing, we made three arguments why the district court turnover order was incorrect. While I'm happy to answer any questions that your honors have, I would like to zero in in the limited time I have on the truly remarkable, unmoored, and unprecedented assertion of personal jurisdiction in this case, specific personal jurisdiction. And if you could allow me to make three points. The first point is this. Before we get to three points, as you know, we have the New York long-arm statute and the due process clause. While they're both distinct hurdles, we're lucky, and for the sake of efficiency, I can take them up both together because they're so similar in reference to the issues that we care about. My first point is an easy one. What's not in dispute? In the due process analysis, plaintiffs have never asserted general jurisdiction. So there's only a question of whether Clearstream is subject to specific jurisdiction in this case. And as to the New York long-arm statute, there's no dispute over the first element. Clearstream indeed transacts business in New York. So let's go to point two. And this is the key to this whole case. Exercise in personal jurisdiction here is not proper because no aspect of plaintiff's turnover claim arises from or relates to Clearstream's business activities in New York. That means plaintiffs fail to satisfy the second prong of New York's long-arm statute and the second prong of the due process analysis, which uses strikingly similar language. New York says that the claims need to arise from the in-forum activities, and due process is the claims have to arise out of the in-forum activities. And in this case, the claims do not arise under Clearstream's in-forum activities. Why is that? What are the elements of a turnover claim? It only requires, and I'm quoting CPLR 5225B, with possession- Where do the assets that are in Luxembourg, how do those get to Luxembourg? How do they get to Luxembourg? The relationship between Clearstream and UBAE was always in Luxembourg. The cat was open in Luxembourg, and so there was never- What role does the New York account that's associated with Clearstream play in any of this? Your point is not that it played no role. Again, the issue, Your Honor, isn't- And this is where I think they misused the Leasy case and where things go sideways. The issue isn't whether there's a metaphysical connection somehow between- So my question is, what role does or did the New York-based account play? None. In terms of the- Clearstream is a systematic, important clearing agency. Basically, every Eurobond ever issued appoints Clearstream and maybe some others to receive interest and redemption payments for every Eurobond in the world. When the money comes in and out every day, $7 to $9 billion, what happens is the money is then used by Clearstream in the United States to pay whatever U.S. dollar obligation it has. Importantly, the right of payment that UBAE-slash-Marcazi had in Luxembourg, it existed before that money came in, and it existed after that money came in. There was a right of payment of a securities entitlement before that money came in, and there's a right of payment now. The right of payment was always in Luxembourg. And again, the focus here is- And again, this is what the court says. It's the claim that has to arise out of the inforum activity. They want to change that word, claim, and have you change the text to asset. They say it's enough if the asset has some connection to the inforum activity. But, Your Honors, that's never been the law. The claim, and the claim here is a turnover claim. What is turnover? It just means Clearstream possesses the asset. That's the only thing. There's no other element to the claim other than possession. But these are dollar-denominated bonds, right? Yes, Your Honor. And so, Clearstream then is obligated to pay to its customers U.S. dollars. What happens is the customer has a- It's like a bank account in Luxembourg, and we have an obligation the way any other bank has an obligation. It's like a creditor-debtor relationship for us to pay the client in dollars. Right, but there are- And the dollars are sourced in New York. The dollars- I mean, yes, but that's completely different dollars. That has no connection to the dollars that may- A great example is this case. The last dollars on this Euro bond, where this whole thing started, happened a decade ago, in 2012, more than a decade ago, with the last redemption or interest payment. This account is frozen, right? So, like, if we ever pay it, it'll be with dollars, you know- You got longer. Yeah, the dollars that came into that account, and this is- Judge Fack found this in the last decision. They went out the same day, $7 to $9 billion washed through the account every day because that's what we do. We're a clearinghouse for these Euro bonds. But again- But the debit and credit, crediting of these accounts, valid denominator or not, occurs in New York. No. No, we have no- We're not a licensed bank in New York. The entire relationship is in Luxembourg. The bank- Clearstream is only in Luxembourg. The only things it does in New York, and this was the court found, was it has a rep office, which is like a guy with a phone that can't conduct banking, and it uses, like all foreign banks, this correspondent account at J.P. Morgan. That's it. So, all the- The entire banking relationship, the account, the right of payment, is all sitting in Luxembourg and has always been sitting in Luxembourg. And that's what- That's why this case just doesn't work. And they'll keep on calling- May I ask you about the statute, federal statute 8772? Please. In your view, is that statute a separate ground about its application in this case for- Or does it- Is it a separate basis for personal jurisdiction generally speaking? No, Your Honor. And let me answer why. Two things about 8772. And this is what- I'm not sure which one you're asking. Number one, 8772 is not a cause of action. 8772, like 1610G, as Judge Stackdown in the previous decision, it just defines what property is available that might not otherwise be available because of sovereign immunity or because of other defenses. But the cause of action is provided by Rule 69 of the federal rules. It's provided by New York. And how do I know that I'm right? Well, once I- Number one, I read this 8772 and it says- The language couldn't be clearer. It says it just provides what assets are available. It doesn't provide the cause of action. It says, shall be subject to execution. I'm not quoting or attachment in aid of execution or an order directing that the assets be brought into the state. What it's saying is these assets, now you have to go follow, like Rule 69 says, the state law rule, like 5225B of the CPLR, and that's how you get the money. The other thing you're asking is 8772, and what I- Maybe, Judge Lotley, what I think maybe you're asking is like, well, there's a doing business prong in 8772, and isn't that, you know, well, you just admitted five minutes ago that Clearstream does business in the United States. That was my question. Yeah, so isn't that good enough? I'm glad you also asked the cause of action. Yeah, so the answer is if it does that, then it's facially unconstitutional. The Congress can change your due process analysis and kind of overrule Deimler and say, okay, you know, in this case, the systematic and continuous test, we're reviving that because that's, you know, this court actually just at the end of September in the FOLD case, FOLD versus PLO, this issue came up. What happened was in that statute, Congress tried to say, you know what, if PLO does this, that, or the other thing, we're going to deem that as consent to jurisdiction. That's what Congress said, and what did this court say? The court said, you can't do that. You can't change the due process analysis by statute. So, Judge Lotley, if you are right, I don't think that's what the Congress actually intended to do with the doing business language, but be that as it may, but if that's what, how you interpret it, and I don't think you should because, you know, constitutional avoidance, then Congress did something they can't do. They can't legislate around the due process clause. Interestingly, the plaintiffs, you know, God bless them, when they, and I support that they've done this, when they went to Congress, they actually had, in the original draft of 8772, they said, without regard to due process. They actually, the statute said, and someone smartly crossed that out and said, of course, we can't, you know, kind of get rid of the due process clause in a statute. So, Your Honor, if you're right that that's what Congress intended, then it's just like the full case and you can't do that. So, I'm sorry. Thank you very much. You reserve some time for rebuttal. Okay, thank you, Your Honor. Mr. Clark. Thank you, Your Honor. May it please the Court, Your Honor.  The District Court lacks authority to order Bank Markazi itself to turn over these assets for three reasons. Section 8772 does not abrogate Bank Markazi's jurisdictional immunity. No statute creates either subject matter or personal jurisdiction to authorize an order directed against Bank Markazi itself and because there was a violation of Bank Markazi's due process rights. So, let's start with the first because I'm having trouble giving the language of the statute, understanding that argument that it doesn't, at some sufficiently clear level, some sufficiently clear degree, abrogate the bank's immunity here. So, when you read the statute, what it is referring to is the immunity of the assets. The Sovereign Immunities Act has two different types of immunity. There's the immunity of sovereigns from being made parties to suits and then there's the immunity of assets. And this statute says that particular financial assets are not subject to execution, attachment, or turnover, notwithstanding sovereign immunity. So, viewed in context, I think that by far the best reading of that statute is what it is doing is abrogating the immunity of the financial assets from execution, attachment, and turnover. And that... It refers in Section A.2 to holding Iran accountable and sanctioning Iraq. Of course, as you'll, I think, acknowledge, for our purposes, thank Markowski and his mentality of Iran. So, when I read that, how am I supposed to read that? Other than to conclude that it's meant to, together with the language, without regard to concerns related to international economy, how am I supposed to read that in any other way other than to conclude that it abrogates the sovereign immunity of the Iranian government? In practically any sovereign enforcement case, the way that judgments against sovereigns are enforced is you get a turnover order against the custodian, against the garnishee, against the party with the assets. This type of order telling the sovereign itself to bring those assets here so we can have them is truly extraordinary. And there's just no indication Congress had that really unprecedented kind of order in mind. In an aspirational language about holding Iran accountable, I mean, Congress surely thought that one way to hold Iran accountable would be to authorize the seizure of its assets under the normal ways one goes about attaching or executing against property. But that language, that notwithstanding language, does not mean that plaintiffs can seize assets in whatever manner they want without regard to any procedural requirements or other limitations that might have... Here you're making a due process argument. No, no, this is still an argument about Congress's intent. A text-based argument. Yeah, so when you have a notwithstanding clause, this court, in cases like Marsh v. Rosenblum, the Fifth Circuit and the Holy Land case, and even plaintiffs themselves make clear at some level that a notwithstanding clause is not a bulldozer that wipes out every procedural requirement that might otherwise stand in your way. It doesn't mean you get to disregard page limits on your brief. It doesn't mean you can go seize assets that are held by the U.S. government or by, you know, a state government that might have its own immunity. A notwithstanding clause has a scope and it's that scope that's wiped out. And when you look at the statute, when you have a statute that says particular financial assets are subject to execution attachments or turnover, notwithstanding sovereign immunity, I mean, that just evokes almost word for word the language of 1609, the provision that grants immunity to assets, not the provision that grants immunity to sovereigns. And if I can just give you another example, Your Honor. You know, Clearstream, if they wanted to seize these assets, could not simply hire a bunch of hackers to break into Clearstream servers and take the money and then defend against the wire fraud charge counts on the ground that they had a notwithstanding clause. At some level, it has to be the case that a notwithstanding clause does not allow you to seize assets in whatever manner you want and without regard to any limitations that may incidentally limit the means by which you can do it. What the notwithstanding clause does is it says these assets are subject to execution but you still have to follow the rules about how you execute against them. And the question of whether you can get a turnover order against Clearstream, against Bank Arkadzi, about what other requirements you have to comply with procedurally, including requirements like jurisdictional, whether that particular respondent is immune from jurisdiction or not, none of those are wiped out by a notwithstanding clause. You know, a good example is this court's decision in the Marsh case. That was one where there was a notwithstanding clause in surplus and the government wanted to sue for recruitment from an entity that had been dissolved more than three years earlier. So there was a statute of limitations that said you can't sue that dissolved corporation after three years. And the plaintiff said, wow, but we have this notwithstanding clause so we can do that notwithstanding the fact that there's this other law that says you can't do it. And what this court held in that case was no. Notwithstanding clauses have scopes. You have to look at the context to determine what Congress was getting at and they're not bulldozers that allow you to just run over every procedural requirement or every other limitation of some sort that may restrict the manner in which you do something. Your Honor, that's only one of multiple arguments though. And I will turn to the other one which is the one you alluded to and that's the due process argument. Bank Markazi is not subject to personal jurisdiction in this suit under 1330B or under the due process clause. And that's so for two reasons under the due process clause. First, with respect to Bank Markazi there are simply no minimum contacts in this forum that relate to the underlying controversy. Is it an instrumentality of Iran? Is it the central bank of Iran? Yes and yes. As defined by the statute, an instrumentality includes a state-owned entity and Bank Markazi is state-owned by the Iranian government. But the important point for today's purposes is that it's juridically separate. It has its own board of governors, its own administrative mechanisms, it operates with a high degree of independence and that's all proven up in the declaration that we filed from our vice governor. So although it counts as an instrumentality under the statute, it's a juridically separate one and therefore under this court's decision it has due process rights. Plaintiffs do have to show a ground consistent with the due process clause for bringing it into court here. And that ground doesn't exist because number one there's no context in the United States that relates to the underlying controversy which is the bombing from 1983 that these claims all have to do  fact that the claim of property in a forum is not good enough and you can't change the result under Schaefer just by filing a turnover suit against the same assets and saying they are related to the claim because we have a turnover claim. Turnover is just a collection mechanism. It is not the underlying controversy that you should focus on for due process. But even if we're wrong about that there's still no jurisdiction over Bank Markazi because the only connection the district court relied on was the fact that Clearstream allegedly used this correspondent account at JPMorgan to process dollar payments and allegedly did so with Bank Markazi's agents. And so we are one step I mean Clearstream has That question is at least in part maybe substantial part on its reading of the contract. Well but it was read she read the contract while applying a fundamentally incorrect legal standard. The court made clear in Stettner that to show agency you have to show knowledge consent and some control. And when she quoted that standard she completely left the control element of it off. And so she never inquired whether Bank Markazi had the ability to control Clearstream's use of this account in New York. And that's critical because knowledge alone is not enough. Knowledge is not enough to show agency. There's no dispute and our fact was very forthright that Bank Markazi knew that Clearstream had a correspondence account in New York. But at the end of the day that is not enough. No amount of knowledge makes up for the fact that Bank Markazi didn't control that function by Clearstream. The analogy we put in our brief is that if you are a law firm you may be the agent of your client. But that doesn't mean when the law firm turns around and acquires all the goods and services it needs to run its business when it does. Now you are saying that the New York law requires some broader level of control? Or some non-zero level of control? Why isn't that in the arrangement that says that Clearstream is responsible for following Markati's directions with respect to these transactions that are of central interest to us to collect interest and principal payments from Markati to credit payments to Markati's account? Why isn't that? That is not what the contract says. There's one contract that obligates Clearstream to credit principal and interest payments to account with customers. Then there's a second provision that says that Markati can give instructions about the security. For example, buy such and such a bond, sell such and such a bond. There is absolutely no provision of that in Markati.  Clearstream decided, well, we don't want to use this account, we want to open an offshore account somewhere. There is absolutely nothing in that contract that would give Markati the right to stand up and object to that and say, no, we  want to   account. It's not in Markati. It's not in  It's not in Markati. It's not in Clearstream. It's not in Markati. It's not in        Markati. It's not in  It's not in Markati. It's not in Clearstream. It's not in Markati. So, the fact is that you have to create the money in  way that allows you to create the  in a make the money in a way that allows you to make the money   allows you to make the money in a way that allows you to create the money in a way that allows you to make the money in a way that allows you to    in a way that allows you to make the  a way that allows you to create the money in a way that provides for the cause of that asset. Why isn't that a perfectly reasonable  to understand 8772? I think that's inaccurate, your honor. 8772 tells us everything that we have to prove in order to make that asset subject to execution. And the execution is a remedy that we have here. And it tells us that it has to be beneficially owned. But those are the elements that we need to prove in order to have execution, which is the remedy that we would have. So it's no different as if we had a breach of contract claim. It could be damages. It could be an injunction. It could be rescission. But this 8772 itself tells us everything we need to know about how we're able to execute against these assets. In the reply, your honor, the cause of action has to be a  asset. Usually, we would have something that says a person who has identified a financial asset that satisfies these various conditions can execute or attach in aid of execution the asset. Where does it say something like that in 8772? It's sympathetic. That's the language it's used with respect to obtaining this remedy of turnover. It's subject to execution. There are procedures we have to follow under state law. Those are procedures in order to obtain the ultimate relief, execution. Again, the statute tells us all the various elements that we need to satisfy in order to collect this particular asset. If I've answered adequately, your honor, I'd like to move on to other issues. First, as I said, rule 69 has to provide the cause of action. That's false. Rule 69 says it is a federal law. It's providing the controlling standards. They say also, well, the statute says you can either execute or have attachment or have the asset brought here to the United States. Because there are these choice of remedies, it's not a cause of action. But that, again, is false, your honor. A contract claim could have multiple remedies as well, damages, injunction or rescission. The reply also raises the new argument, your honor. They say it's not a cause of action because we didn't amend our complaint. Everybody knew when this case was remanded what the proceedings were going to be about. In the Mitchell case, this court clearly said if there's notice provided to the defendants, you don't necessarily need to have a complaint. In addition, there's a case, it's O'Hare versus General Marine. What that case says is when in the middle of the case, there's no need to go back and amend the complaint. Even if 8732, your honor, was not a cause of action, everyone acknowledges that in order to prove our entitlement to collect this asset, there are certain things we need to prove. According to clear stream under 5225, we have to prove among other facts that Martazzi is a beneficial owner of these assets. I understand there's no genuine dispute about that, but maybe I misunderstood that. Unfortunately that's incorrect, your honor. There should be no dispute about it, but clear stream has maintained for the decades this litigation has been undergoing that in fact Ubai, the Italian middleman, is either the beneficial owner or has a constitutionally protected interest in those assets. There is a dispute about that. We have to prove in order to counteract that dispute, we have to prove that there are the beneficial owner. Here are some various facts that we put into evidence. We put into evidence that Martazzi transferred money to the New York account that clear stream operated in order to fund the purchases of these securities. We also put into evidence that there was $1.68 billion in payments that were collected by clear stream in its New York account that were related to the bonds that were beneficially owned by Martazzi. After those amounts were collected by clear stream, there were credits made to the account that was in Luxembourg. On both of those facts, the fact that Martazzi funded the purchase and the fact that cash flows were generated $1.68 billion collected in the United States on the bonds that were owned by Martazzi defeats the idea that they're highly relevant. There's no way that a judge would have excluded that evidence from the trial. It's important. That's why our cause of action is a design defect case. The court said they didn't design it in the state. They didn't sell it in the state. And nonetheless, because you created a market in the state for these same models, not the same car, but the same  you have to have the sufficient connection in order to have the due process clause satisfied. Now, here, in contrast, we have billions of dollars coming through the state. We have to prove that in order to prove our     case. And I think it was raised by Mr. Kamenetsky. There was, of course, a separate series of litigations in Lexington that was subject to a potentially devastating double liability scenario. What How do we view that as a legal matter? What are we What should we draw from that? What shouldn't we draw from that? It would be very helpful to have your views on that. So I think the court should not be concerned with that at all, Your Honor, for multiple reasons, factual and legally. First of all, there's no case ever in the history of jurisprudence that we could find where this double liability argument has been held to prevent exercising jurisdiction. The jurisdiction focus Yes, it has indeed, Your Honor. We cited two cases in which counsel had been subject to a re-argument  but twice since then this issue has been reaffirmed. The court rejected this potential double liability argument. In addition, Do you dispute the genuineness of the risk? We do not  the risk. And what they did is they have annual reports of the issue and issued a press release with respect to this litigation. They have a $4.9 billion exposure to a damages lawsuit that they have brought, and in their annual report they say that the damages action will result in any liability. So they told us that in Luxembourg they are not going to impose any liability on us. In addition to that, even if they made a mistake, after the turnover order was issued in this case, they issued a press release. And they said the same thing again, that they don't have damages exposure in Luxembourg. So you don't need to listen to me, we can listen to them. They had their American counsel tell us that there is a case in Luxembourg that didn't do any analysis of what the likelihood was. Does anyone really believe that Luxembourg is going to bankrupt one of the biggest financial institutions in the country? They are going to get a total discharge from the U.S. court and they are going to get an anti-suit injunction which was upheld. In addition to that, they have a contract that says if a foreign court tells us to do something, we have to comply with those orders. So what they are telling us is if a foreign litigant can go to any court and raise some ruckus about whether they can ignore an American court order, including the Peterson case, if they ignore all of that in a foreign court, our clients should be in  same position. It doesn't exist. Normally issues like that would be handled under comedy. When Congress adopted 8772, they said clearly that issues of comedy are not to be considered in terms of this particular litigation. They wanted to make sure that the various elements of the claim were collected. Again, your honor, there is no double exposure. They told us that. What better evidence can we have? There is a court order that prevents them from before they go back to Luxembourg to get our order recognized. That is an issue that will be handled in the district court. The remedy at that point can be decided. What they are saying is no jurisdiction. There is nothing in the due process clause that entitles them to make a bogus double liability argument. I think in terms of the jurisdictional analysis, your honor, at this point in time, that is not something that the court should concern itself with. Congress has said that comedy issues are not to be considered. That is the analysis that would normally concern foreign court orders. The overarching point is that it is not subject to suit itself, although its assets are made clearly subject to execution under 8772. I think it is important to note that 8772 says the bond proceeds are subject to execution not with standing any other provision of law including any provision with respect to  subject matter jurisdiction now. Everyone agrees that ancillary jurisdiction principles generally will provide for collection actions in a sovereign immunity suit where there was an exception to sovereign immunity in the underlying case. Weinstein held that in a joint ruling over an instrumentality of Iran and in connection with making that ruling it rejected the argument which is that the peacock case dictates that Weinstein's effort to collect an instrument ality  Iran was not a sovereign case but was an independent controversy. The second circuit clearly said in these circumstances where TRIA makes the asset available for the court to hand over its assets. I think it's really important   language of the Weinstein case. What the court said was if this and what the court said was that the   Weinstein case did not have jurisdictional immunity as well as immunity from attachment and execution. So this argument is defeated by the Weinstein case. I do have one housekeeping matter to mention this day or the injunction. And the argument on the other side is not made. This is maybe why it's a housekeeping matter. What are we going to do today given our very specific case law with respect to the injunction of the state? We were satisfied that as long as Clearstream was barred from paying out these assets that we didn't need to deal with in this case, we  pursue this issue. We didn't pursue this issue. Thank you very much. Thank you so much. I'll be as quick as I could be. I appreciate the court's indulgence. I'm going to go in the same order as Mr. Bonner. Is 8772 a claim or not? It's the exact same language as 1610G of the SSIA. This is what Judge Sack said in his opinion in the previous Peterson case. Comprehensive though it may be with respect to immunity and exceptions, the SSIA does not specify the circumstances of attachment and execution proceeding. The SSIA does not provide methods for the enforcement of judgments against foreign states, only that those judgments may not be in accordance with the SSIA. The SSIA does not not provide methods for enforcement of judgments against Let me say what that means. Just so you understand what it means. That means anyone that holds the Euro bond, anyone, any Italian entity that holds the Euro bond is doing business. An Italian person brings a claim against an Italian utility for a slip and fall and gets a judgment. If that Italian utility owns a Euro bond, this Italian victim can come to New York and say, give me the money. And we'll say, what are you talking about? No, this Italian utility got the interest payments in New York and that's enough because the second circuit held that that's enough of arising from in Italy. And that's what your honors would be open to. It's a concern under New York law? It would be a huge concern because your honors will be very busy. You will be the forum for any turnover action for anyone that holds the Euro bonds around the world. My question is a serious one. So is that a concern under New York law? And you're saying that, well, I don't know what you're saying, is it that we don't have fair New York law that decides this one way or the other? You're relying on statute. And I appreciate that. I'm asking about the case law. That's the case of Leacy. Again, I hate to do this, but I  Leacy. Can we at least say his case was right? What happened in Leacy? They love the Leacy case. Why? Because they say, hey, here's a foreign bank with subject jurisdiction because of its use of a correspondent account in New York. Not perfect. It's a great case for us. In Leacy, the bad conduct was done through the correspondent account. The allegation there was that the LCD Levity commercial bank was wiring money from New York to Hizbollah intentionally to support terrorism. There's a nexus between the claim and the conduct was right that the claim arose from the use of the correspondent account in New York. All we did was accept every interest and redemption payment on every case. Again, I go back to Leacy. Leacy was a case that the second circuit certified to the court of appeals. What we call Leacy 2 is the court of appeals case. Leacy 3 is the second circuit. It's because the cause of action arises from the New York conduct, therefore, it satisfies the statute. The difference couldn't be more dramatic. There's no allegation that anything happened. The misconduct that Mr. Bonner mentioned on behalf of the clerical team, the district court found that it's wishful thinking to say that this case has something to do with misconduct. We did have a settlement but there was denial of any of the charges. You can't bring this up without any sort of due process. On the comedy double liability point, 8772 tries to strip the comedy defense but the Daimler case said that the comedy consideration is part of the due process analysis. It's part of the constitutional analysis. 571 U.S. at 141, 142. From that, just very briefly, are we to draw the conclusion that invariably Congress is prevented from stripping us of the ability to consider international comedy? Yes, because that's what the Supreme Court has said. That's part and parcel of the due process. Whenever Congress makes that pronouncement in the statute, we just necessarily ignore it, at least in the context of jurisdictional issues. Yes, the other thing I wanted to say about the double liability point, is that there are two types of claims that were asserted against Clearstream. There's the claim for turnover, which is what we're talking about today. Many claims also asserted direct damages against Clearstream. The language that Mr. Bonner read from our annual report, which he admitted, he said it's about the direct damages claim, which we think obviously has no merit. They don't address the turnover claim, which is where we're subject to this double liability. You could say that Luxembourg courts are kangaroo courts. We're a Luxembourg company. It's really hard. The suggestion was who cares what they say. But they're our home court and they said we have a court order as we speak and we're fighting it tooth and nail. But the court order says you may not comply with any turnover order. Your Honor, thank you. Mr. Krupp. Thank you, Your Honor. Just a couple of points I wanted to address. First, there's two types of immunity. If a third-party bank has possession of the sovereign's property and you want an order telling that bank to hand over the property, you need an exception to the sovereign's own jurisdictional immunity. That is undoubtedly the main thing in Congress's mind when it passed the statute because it was legislating against a third-party custodian. If you're trying to tell the sovereign to do something, you need an exception to jurisdictional immunity. And if you're serving a turnover order against the sovereign, telling the sovereign to turn over its own property, you need two different exceptions. In that circumstance, the jurisdictional immunity exception needed an exception. I don't think Congress had any intent to do that. I appreciate that. That's your argument. But if that's what Congress intended, then what they should have said was that notwithstanding sovereign immunity, a court may order Bank Markazi to turn over the funds. And that echoes practically perfectly. So that's really what Congress is trying to do there. And just to make this point even more clear, the Weinstein case had absolutely nothing to do with telling a sovereign to do something. The case involved a house out in Queens somewhere. The case did not involve an order telling Bank to go bring the house somewhere else. That entire case has to be viewed against the backdrop that the only immunity was the immunity of the assets. That issue never arose. If you look at the bottom line, what the court says is we find it clear that section 201A provides courts with subject matter jurisdiction over execution and attachment proceedings against property. Says not one word about entering an order against the sovereign to do something because that is a completely different type of order that raises completely different subject matter jurisdiction and immunity concerns. Turning to personal jurisdiction. This is a really basic point. This is a really easy case. The only basis on which bankruptcy was held was that they were acting as agents. This becomes a short decision with respect to us. Even if you rule the other way, there are substantial agency issues on this record. One thing I should make clear is the posture. The district court denied our motion to dismiss on personal jurisdiction grounds. To do that, there has to have been not even the slightest evidence, no disputed facts at all, about these critical factual predicates to the court. I do not read those as even coming close to saying that there is control over how Clearstream uses its correspondent  but at best that language is ambiguous. And against that language from the general terms and conditions, we have Mr. Masumi's declaration. And this is at page 1628 of the joint appendix. This is the gentleman that was running the bond trading desk and the knowledge of whether or not he had any ability to tell Clearstream how to process the correspondent bank accounts. And so you know paragraph three, he's very upfront. He said yes, I knew that Clearstream had this correspondent bank account at United States Bank. I recall the information was on the website and in the manuals. But then the key paragraph is paragraph four. This is page 1628. To my knowledge however, bank had no control over Clearstream's correspondent bank accounts. I understood that bank had no right to demand that Clearstream use the correspondent  account. I understand that that's unrebuttable. That's my contention, but at a minimum there's a genuine dispute under summary judgment standards. The court should not have granted summary judgment. For the reasons we've given, the court should reverse the turnover order to the extent it was directed. The next step would be for the district court to decide whether the case can go forward. In our view, that's where these proceedings come into play. One of the factors the court has to consider is whether there's an alternative form for plaintiffs to pursue this claim. I think after all these years that there's been no effort to settle. With respect to I mean, it is a little difficult to settle when the plaintiffs are able to go into Congress and get laws passed saying give us the assets. If we settle with them, then somebody else in the Friends of Congress will. Thank you, Your Honor. Thank you,